UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RHONDA RUITER,

    Plaintiff,            Hon. Ellen S. Carmody

v.

                     Case No. 1:12-cv-781

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## **OPINION**

    This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On November 13, 2012, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #12).

    Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 40 years old on her alleged disability onset date. (Tr. 136-39). She possesses a General Equivalency Diploma (GED), has attended college, and worked previously as a label worker, case packer, and hi-lo operator. (Tr. 32, 50, 60).

Plaintiff applied for benefits on May 13, 2008, alleging that she had been disabled since April 3, 2007, due to elbow surgery, fibromyalgia, depression, and a sleep disorder. (Tr. 136-39, 164). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 82-135). On December 7, 2010, Plaintiff appeared before ALJ Paul Jones, with testimony being offered by Plaintiff and vocational expert, Paul Delmar. (Tr. 42-79). In a written decision dated December 30, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 21-34). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On July 10, 2007, Dr. Stephen Urbin performed surgery on Plaintiff's left[1] elbow. (Tr. 282). Specifically, the doctor performed "release of left elbow extensor tendon with removal of degenerative scar tissue" to treat "left recalcitrant lateral epicondylitis or tennis elbow." (Tr. 282).

On September 11, 2007, Plaintiff was examined by Dr. Urbin. (Tr. 316). Plaintiff reported that she "still has symptoms, but...is definitely better than she was before." (Tr. 316). The doctor observed that Plaintiff experienced "some pain with resistance against wrist dorsiflexion at the lateral epicondyle, but there is not as much as there was before." (Tr. 316). The doctor further observed that Plaintiff "has good elbow flexion, extension, and rotation." (Tr. 316). Plaintiff was cleared to resume work subject to "light duty restrictions" and instructed to continue participating in physical therapy. (Tr. 316).

Treatment notes dated September 18, 2007, indicate that Plaintiff's elbow "still aches a little bit but all in all she is doing much better." (Tr. 315). Dr. Urbin concluded that Plaintiff could "return to her regular job without restrictions." (Tr. 315). X-rays of Plaintiff's left shoulder, taken November 20, 2007, were "negative" with "no osseous or soft tissue abnormalities." (Tr. 380).

On December 19, 2007, Plaintiff was examined by Dr. Robert Vermaire. (Tr. 393-94). Plaintiff reported that she was experiencing "moderate-severe" pain in her left shoulder which "is aggravated by physical therapy." (Tr. 393). An examination of Plaintiff's left shoulder revealed limited range of motion and tenderness to palpation. (Tr. 393-94). On December 26, 2007, Plaintiff

---

[1] Plaintiff is right-handed. (Tr. 57).

4

participated in an MRI examination of her left shoulder the results of which revealed "mild arthritic changes in the acromioclavicular joint" and "mild thinning of the supraspinatus tendon but no tear is evident." (Tr. 412).

On February 11, 2008, Plaintiff was examined by Dr. Vermaire. (Tr. 397-98). Plaintiff complained that she was experiencing "moderate" left shoulder pain that "is aggravated by lifting." (Tr. 397). An examination revealed the following:

> No lumbar spine tenderness. Normal mobility and curvature. Left shoulder: no joint deformity, heat, swelling, erythema or effusion. Full range of motion. Right shoulder: no joint deformity, heat, swelling, erythema or effusion. Full range of motion.

(Tr. 398).

On March 3, 2008, Plaintiff was examined by Dr. Vermaire. (Tr. 399-400). Plaintiff reported that she was experiencing pain in her left elbow and shoulder which "occurs persistently and is worsening." (Tr. 399). The doctor also noted that Plaintiff was experiencing depression. (Tr. 399). Plaintiff's depression medication was increased. (Tr. 400). Treatment notes dated April 24, 2008, indicate that Plaintiff's depression had "improved" and that modifying her medication regimen "has been helpful." (Tr. 402).

On May 8, 2008, Plaintiff was examined by Dr. Urbin. (Tr. 312). Plaintiff reported that "she does not have the pain [in her left elbow] she did before but she still has some discomfort with any activities." (Tr. 312). Plaintiff also reported that she recently "lost her job because...she was unable to find work with restrictions." (Tr. 312). The doctor concluded that Plaintiff was capable of working subject to the following restrictions: (1) no lifting more than 10 pounds and (2) she should avoid highly repetitive wrist dorsiflexion activities. (Tr. 312). Physical therapy treatment notes dated October 2, 2008, indicate that Plaintiff rated her left shoulder pain as "2/10."

5

(Tr. 430).

On January 6, 2009, Plaintiff participated in a consultive examination conducted by Allison Bush, MS, LLP. (Tr. 440-42). Plaintiff reported that she was disabled due to fibromyalgia, depression, sleep difficulties, and "problems" with her left elbow and shoulder. (Tr. 440). Plaintiff appeared "sad and tearful during the evaluation," but the results of a mental status examination were otherwise unremarkable. (Tr. 441-42). Plaintiff was diagnosed with "major depressive disorder, recurrent, moderate." (Tr. 442). Bush concluded that she believed that Plaintiff's "depression would prevent her from maintaining gainful employment at this time." (Tr. 442).

On September 1, 2009, Plaintiff was examined by Dr. Urbin. (Tr. 575). Plaintiff reported that the condition of her left elbow "has not improved much" following surgery. (Tr. 575). The results of a physical were "essentially normal." (Tr. 575). Plaintiff exhibited "good full elbow flexion and extension and full pronation and supination" with "no pain with resistance against wrist dorsiflexion or volarflexion." (Tr. 575). Dr. Urbin concluded that "at this point there really is not anything for us to do" and that Plaintiff "needs to find a light duty job lifting less than 10 pounds, as we have put her on permanent restrictions." (Tr. 575).

On November 17, 2009, Plaintiff began treatment with licensed psychologist Christian Jansen-Yee, Psy.D. (Tr. 541-45). Plaintiff reported that she recently began attending college and "will study and study, but can't recall for tests." (Tr. 541). Plaintiff also reported that she has experienced "a hard time focusing all my life." (Tr. 541). Plaintiff was diagnosed with: (1) major depressive disorder, recurrent, moderate and (2) adult attention deficit/hyperactivity disorder. (Tr. 545). Plaintiff's medication regimen was modified. (Tr. 545). Treatment notes dated March 25, 2010, indicate that Plaintiff's medication improved her ability to focus. (Tr. 537).

On April 7, 2010, Plaintiff participated in a consultive examination conducted by Dennis Mulder, Ed.D. (Tr. 551-56). Plaintiff reported that she experiences "pain daily and constantly throughout her body." (Tr. 551). Plaintiff reported that her pain ranges from 4/10 to 9/10. (Tr. 551-52). Plaintiff also reported experiencing "constant fatigue even without exertion" as well as "problems with concentration, attention, and focus." (Tr. 552). With respect to Plaintiff's level of activity, the doctor observed as follows:

> The patient arises at 8:00 a.m. In the morning she will drink coffee and watch television and study. In the afternoon she will study or take a nap, and in the evening she will watch television. She does go to college classes sometimes in the morning, sometimes in the afternoon, and sometimes in the evening. She goes to bed at 10:30 p.m. She does some of the dusting, dishes, and laundry, but no yard work. She is not actively involved in any organized social or recreational activities.

(Tr. 553).

Plaintiff "was cooperative but rather subdued and depressed looking," but the results of a mental status examination were otherwise unremarkable. (Tr. 554-55). Plaintiff was diagnosed with: (1) major depressive disorder, recurrent, moderate and (2) attention deficit hyperactivity disorder. (Tr. 555). The doctor concluded that:

> The potential for the patient becoming gainfully employed in a simple, unskilled work situation on a sustained and competitive basis is guarded. The combination of her physical distress, along with her psychological distress, greatly interferes with her ability to function at a level necessary for her to obtain and maintain full-time gainful employment.

(Tr. 556).

X-rays of Plaintiff's hip, taken May 14, 2010, were "normal." (Tr. 750). X-rays of Plaintiff's sacrum and coccyx, taken on August 4, 2010, were "normal." (Tr. 748). X-rays of

7

Plaintiff's lumbosacral spine, taken the same day, were likewise "normal." (Tr. 749). On August 11, 2010, Dr. Vermaire reported that laboratory testing of Plaintiff's blood "showed no signs of lupus, rheumatoid arthritis or other significant inflammatory condition of [the] joints." (Tr. 732). On August 19, 2010, Plaintiff participated in an MRI examination of her lumbar spine the results of which revealed "mild degenerative changes" with "no disc herniation or significant spinal canal stenosis." (Tr. 745-46).

On November 5, 2010, Dr. Vermaire completed an assessment of Plaintiff's ability to perform physical work-related activities. (Tr. 754-57). The doctor reported that Plaintiff can continuously sit for one to two hours, stand for 30 to 60 minutes, and walk for 30 to 60 minutes. (Tr. 754). The doctor reported that during an 8-hour work day, Plaintiff can sit for four hours, stand for one hour and walk for one hour. (Tr. 754). The doctor reported that Plaintiff can occasionally lift/carry 5 pounds but can never lift/carry 10 pounds or more. (Tr. 754). The doctor reported that Plaintiff can occasionally stoop and climb ramps/stairs, but can never reach above shoulder level, squat, kneel, crouch, crawl, or climb ladders/ropes/scaffolds. (Tr. 755). The doctor reported that Plaintiff can occasionally use her fingers to perform picking and pinching activities but can never use her "whole hand" to perform seizing, holding, grasping, or turning activities. (Tr. 755). The doctor reported that Plaintiff can never use her upper extremities to perform pushing or pulling activities. (Tr. 756).

Dr. Vermaire also completed an assessment of Plaintiff's ability to perform mental work-related activities. (Tr. 760-61). The doctor rated as "fair" Plaintiff's ability in the following areas: (1) relate to co-workers; (2) deal with the public; (3) interact with supervisors; (4) use judgment; (5) function independently; (6) relate predictably in social situations; and 7) demonstrate

reliability. (Tr. 760-61). The doctor rated as "poor" Plaintiff's ability in the following areas: (1) deal with work stresses; (2) maintain attention/concentration; (3) understand, remember, and carry out complex job instructions; (4) understand, remember, and carry out detailed but not complex job instructions; and (5) behave in an emotionally stable manner. (Tr. 760-61). The doctor rated as good or very good Plaintiff's ability in the following areas: (1) follow work rules; (2) understand, remember, and carry out simple job instructions; and (3) maintain personal appearance. (Tr. 760-61).

On November 12, 2010, Dr. Jansen-Yee completed an assessment of Plaintiff's ability to perform mental work-related activities. (Tr. 762-63). The doctor rated as "poor" Plaintiff's ability in the following areas: (1) follow work rules; (2) relate to co-workers; (3) deal with the public; (4) interact with supervisors; (5) use judgment; (6) maintain attention/concentration; (7) maintain personal appearance; (8) behave in an emotionally stable manner; (9) relate predictably in social situations; (10) demonstrate reliability; and (11) understand, remember, and carry out detailed but not complex job instructions. (Tr. 762-63). The doctor rated as fair Plaintiff's ability to function independently and understand, remember, and carry out simple job instructions. (Tr. 762-63). Finally, the doctor reported that Plaintiff had no ability to understand, remember, and carry out complex job instructions. (Tr. 763).

# ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from (1) left epicondylitis; (2) depression; and (3) attention deficit hyperactivity disorder (ADHD), severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 23-27). With respect to Plaintiff's residual functional capacity, the ALJ determined she retained the capacity to perform work subject to the following limitations: (1) she can only occasionally lift up to 10 pounds; (2) she can stand/walk six hours during an 8-hour workday with normal breaks; (3) she can sit for six hours during an 8-hour workday with normal breaks; (4) she can only occasionally reach, handle, push/pull, or perform fine manipulation activities with her left upper extremity; (5) she must avoid more than moderate exposure to vibration; and (6) she is limited to one or two step tasks. (Tr. 27).

The ALJ concluded that Plaintiff was unable to perform any of her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there

exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Paul Delmar.

The vocational expert testified that there existed approximately 6,500 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 72-75). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

      a.      The ALJ Properly Evaluated the Medical Evidence

As noted above, Dr. Vermaire and Dr. Jansen-Yee both completed reports indicating that Plaintiff was impaired to an extent beyond that recognized by the ALJ. The ALJ accorded limited weight to the doctors' opinions. Plaintiff argues that because Dr. Vermaire and Dr. Jansen-Yee were her treating physicians, the ALJ was required to afford controlling weight to their opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of*

*Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

Dr. Vermaire reported that during an 8-hour work day, Plaintiff can only sit for four hours, stand for one hour, and walk for one hour. The doctor also reported that while Plaintiff can

13

occasionally lift/carry 5 pounds, she can never lift/carry 10 pounds or more. Dr. Vermaire and Dr. Jansen-Yee both reported that Plaintiff's ability to perform mental work-related activities was also compromised to a greater extent than the ALJ recognized.

With respect to Plaintiff's physical limitations, the ALJ observed that Dr. Vermaire's opinion is inconsistent with the objective medical evidence as well as the opinion of treating physician, Dr. Urbin. Aside from moderate limitations with respect to Plaintiff's left upper extremity, which are sufficiently accounted for in the ALJ's RFC determination, the objective physical evidence simply fails to support Dr. Vermaire's opinion regarding Plaintiff's physical limitations. The ALJ's RFC determination is also consistent with the opinion of Dr. Urbin, an orthopedic specialist, who treated Plaintiff for a lengthy period of time. As for Plaintiff's emotional impairments, the evidence of record indicates that Plaintiff responded well to medication and conservative treatment and is not limited to the extent alleged. In sum, the ALJ articulated good reasons, supported by substantial evidence, for affording less than controlling weight to the opinions expressed by Dr. Vermaire and Dr. Jansen-Yee.

b. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff argues that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to

which the vocational expert indicated that there existed approximately 6,500 such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  September 24, 2013              /s/ Ellen S. Carmody            
                                       ELLEN S. CARMODY
                                       United States Magistrate Judge